## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**WILLIAM COZZENS**

      **Petitioner,**

**v.**                              **Case No. 8:18-cv-1346-T-02JSS**

**SECRETARY, Department of Corrections,**

      **Respondent.**

_____/

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      William Cozzens petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and challenges the validity of his state conviction for burglary of an unoccupied dwelling, for which conviction Mr. Cozzens serves thirty years imprisonment.  The Respondent admits the petition's timeliness.  (Dkt. 6 at 7).

### Background and Procedural history[1]

      The victim was out of town for work.  A neighbor, Stuart Turnbull, saw a man, later identified as Mr. Cozzens, exiting the victim's house two times carrying boxes.  Mr. Turnbull called out to Mr. Cozzens but Mr. Cozzens ignored him, placed the boxes in a van, and left.  Mr. Turnbull called the victim to confirm that

_____

[1] This factual summary derives from Mr. Cozzens's brief on direct appeal and the record.  (Dkt. 7, Exs. 3 and 7).

the victim had not given anyone permission to enter his house. Mr. Turnbull called the police and provided a description of the perpetrator. Based on both Mr. Turnbull's description and past dealings with Mr. Cozzens, the victim believed that Mr. Cozzens was the man Mr. Turnbull saw removing the boxes from the house. Upon returning from out of town, the victim attempted without success to retrieve from Mr. Cozzens the items that Mr. Cozzens had taken from the home. Mr. Cozzens was subsequently was arrested and, after receiving *Miranda* warnings, admitted to the police that he had broken into the victim's house. Mr. Cozzens was charged with burglary. He proceeded to trial and was convicted by a jury. Mr. Cozzens was sentenced as a violent career criminal to thirty years imprisonment.[2]

## I. EXHAUSTION AND PROCEDURAL DEFAULT

The Respondent correctly argues that Grounds One, Two, and Four are unexhausted and procedurally barred from federal review.

**Grounds One and Two**

In Ground One Mr. Cozzens contends that the victim committed perjury during his deposition and at trial. In Ground Two Mr. Cozzens contends that he was wrongfully convicted based on the allegedly perjured evidence. He argues that these alleged errors violated his right to due process. The Respondent opposes

---

[2] The state appellate court affirmed Mr. Cozzens's conviction on direct appeal but remanded to the trial court because the court imposed restitution without holding a hearing. (Dkt. 7, Ex. 5).

both Ground One and Ground Two as unexhausted and procedurally barred because Mr. Cozzens did not present the federal dimension of either claim to the state court.

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518 19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a petitioner must present to the federal court the same claim presented to the state court. *Picard*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, a petitioner must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

When Mr. Cozzens presented these grounds to the state court in his Rule 3.850 motion he neither cited a federal case, nor asserted a violation of a federal constitutional right, nor labeled his grounds as "federal." (Dkt. 7, Ex. 4 at 6–8). Consequently, Mr. Cozzens did not "fairly present" the federal grounds to the state court. *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'")

4

(quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Mr. Cozzens's failure to present to the state court a federal due process claim challenging the allegedly perjured testimony deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Preston*, 785 F.3d at 460 (noting that "simply mentioning a phrase common to both state and federal law . . . cannot constitute fairly presenting a federal claim to the state courts"). Consequently, Grounds One and Two are unexhausted. State procedural rules preclude Mr. Cozzens from returning to state court to present his federal claims in either a second direct appeal or a second Rule 3.850 motion. Mr. Cozzens's failure to properly exhaust his federal claims in the state court results in a procedural default.

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice

5

exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to her actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, Mr. Cozzens must show constitutional error coupled with "new reliable evidence — whether . . .

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Mr. Cozzens fails to demonstrate cause for the default of his federal due process claims because he fails to show that some "external factor" prevented him from raising the federal claims in state court. *Wright*, 169 F.3d at 703. Mr. Cozzens likewise fails to establish prejudice because he does not show that the alleged errors infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Mr. Cozzens satisfies neither exception to procedural default, both Ground One and Ground Two are procedurally barred from federal review.

**Ground Four**

Mr. Cozzens contends that the trial court erred by not providing him notice of the State's intent to seek application of the violent career criminal sentencing enhancement. Mr. Cozzens asserts no federal constitutional violation resulting from this alleged error. To the extent that the petition, liberally construed, *see Haines v. Kerner*, 404 U.S. 519 (1972), asserts a federal due process claim, Mr. Cozzens cannot obtain relief because he did not present this ground to the state court, rendering the ground unexhausted. Because Florida procedural rules preclude the filing of a second direct appeal, the ground is procedurally defaulted.

Mr. Cozzens fails to demonstrate cause for the default of a federal due process claims because he fails to show that some "external factor" prevented him from raising the federal claim in state court. *Wright*, 169 F.3d at 703. Mr. Cozzens likewise fails to establish prejudice because he does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Mr. Cozzens satisfies neither exception to procedural default, Ground Four is procedurally barred from federal review.

## II. MERITS

The remaining grounds in the petition are exhausted and entitled to review on the merits.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Mr. Cozzens's petition. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition

for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (quoting *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal

court must afford due deference to a state court's decision.  "AEDPA prevents

defendants — and federal courts — from using federal habeas corpus review as a

vehicle to second guess the reasonable decisions of state courts."  *Renico v. Lett*,

559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating

state court rulings, which demands that state court decisions be given the benefit of

the doubt' . . . .") (citations omitted).  When the last state court to decide a federal

claim explains its decision in a reasoned opinion, a federal habeas court reviews

the specific reasons as stated in the opinion and defers to those reasons if they are

reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas

court simply reviews the specific reasons given by the state court and defers to

those reasons if they are reasonable.").  When the relevant state-court decision is

not accompanied with reasons for the decision, the federal court "should 'look

through' the unexplained decision to the last related state court decision that does

provide a relevant rationale [and] presume that the unexplained decision adopted

the same reasoning."  *Id*.  "[T]he State may rebut the presumption by showing that

the unexplained affirmance relied or most likely did rely on different grounds than

the lower state court's decision . . . ."  *Id*.

  As *Pinholster* explains, review of the state court decision is limited to the

record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward looking language requires an examination of the state court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

563 U.S. at 181–82.  Mr. Cozzens bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Mr. Cozzens's post-conviction claims warrants deference in this case.

### Ineffective Assistance of Counsel

Mr. Cozzens claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims*, 155 F.3d at 1305, explains that

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance

of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented.  In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of counsel
> claims.  According to *Strickland*,
>
>> First, the defendant must show that counsel's performance
>> was deficient.  This requires showing that counsel made
>> errors so serious that counsel was not functioning as the
>> "counsel" guaranteed the defendant by the Sixth
>> Amendment. Second, the defendant must show that the
>> deficient performance prejudiced the defense.  This
>> requires showing that counsel's errors were so serious as
>> to deprive the defendant of a fair trial, a trial whose result
>> is reliable.
>
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice.

*Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective

assistance claim . . . to address both components of the inquiry if the defendant

makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying

*Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

Mr. Cozzens must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To meet this burden, Mr. Cozzens must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91. Mr. Cozzens cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not

interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense."  *Chandler*, 218 F.3d at 1317.  "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added).  "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense.  Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."  *Chandler*, 218 F.3d at 1318.  "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."  *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

15

Under 28 U.S.C. § 2254(d), Mr. Cozzens must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 106; *see also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."); *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is  governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").

Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Mr. Cozzens cannot meet the "contrary to" test in Section 2254(d)(1).  Mr. Cozzens instead must show that the state court

16

unreasonably applied *Strickland* or unreasonably determined the facts.  In

determining "reasonableness," a federal petition for the writ of habeas corpus

authorizes determining only "whether the state habeas court was objectively

reasonable in its *Strickland* inquiry," not an independent assessment of whether

counsel's actions were reasonable.  *Putman v. Head*, 268 F.3d 1223, 1244, n.17

(11th Cir. 2001).  The presumption of correctness and the highly deferential

standard of review requires that the analysis of each claim begin with the state

court's analysis.

**Ground Three**

Mr. Cozzens alleges in Ground Three of his federal petition "trial court error

and ineffective assistance of defense counsel [based on a ] wrongful VCC sentence

enhancement."  (Dkt. 1 at 7).  More specifically, Mr. Cozzens contends that his

trial counsel rendered ineffective assistance by not objecting to the sentencing

enhancement "where no prior notice thereof was provided to the defendant."

(Dkt. 1 at 7).  Mr. Cozzens alleges that he "has been erroneously convicted of the

charged burglary offense and thereafter illegally and mistakenly given a VCC

enhanced sentence of thirty (30) years instead of the normal 69.15-month State

Prison sentence that should have been imposed, pursuant to Fla. Stat. 775.084,

when no mandatory notice of [the] State's [i]ntent to seek an enhanced penalty was

provided therefore." (Dkt. 1 at 7).   Mr. Cozzens claims that trial counsel's alleged

error resulted in a due process violation.

The state post-conviction court denied this ground as follows:

In his third ground, Defendant argues that counsel was ineffective for failing to object to his VCC sentence enhancement on the basis that the requisite notice was not provided.  Defendant further argues that he was prejudiced as a result of this failure because he was sentenced to 30 years incarceration rather than 69.15 months.  Despite his contentions, Defendant's argument is refuted by the record.

Section 775.084(3)(c)(1) requires that notice be served on a defendant and his attorney a sufficient time before the imposition of a VCC sentence in order to allow for the preparation of a submission on the defendant's behalf.  Here, the record reflects that such notice was served in August of 2012.  Moreover, even if Defendant did not receive written notice that he qualified for the VCC enhancement, he received actual notice at the end of his trial.  As such, Defendant's claim that counsel was deficient for failing to object based upon lack of notice is refuted by the record.  *See Massey v. State*, 589 So. 2d 336, 337 (Fla. 5th DCA 1991), *approved*, 609 So. 2d 598 (Fla. 1992) ("While lack of any notice, written or otherwise, is a due process violation, lack of written notice, when actual notice is given, is not.  The statutory requirement for written notice is to insure (and offer a method of proof) that actual notice was given."); *Bradford v. State*, 567 So. 2d 911, 915 (Fla. 1st DCA 1990) ("It is clear that appellant did receive this record notice of the state's intentions at the end of the trial (27 days prior to his sentencing), giving ample time to prepare a submission at sentencing.").  Additionally, Defendant's claim is further refuted by the fact that his attorney prepared a submission that was presented on his behalf at sentencing.  *See Roberts v. State*, 559 So. 2d 289, 291 (Fla. 2d DCA 1990), *cause dismissed*, 564 So. 2d 488 (Fla. 1990) (finding that the purpose of the notice requirement is fulfilled when a defendant's attorney makes a presentation on his behalf prior to sentencing).  In view of the above, Defendant's third ground is denied.

(Dkt. 7, Ex. 7-4 at 36) (court's record citations omitted).

The record shows that on August 9, 2012, (nearly two years before the June 2014 trial) the State provided to Mr. Cozzens and his counsel a notice of enhanced penalty indicating that Mr. Cozzens qualified for both the habitual felony offender enhancement and the violent career criminal enhancement.  (Dkt. 7, Ex. 7-4 at 47). The record also shows that after the jury returned its verdict the trial judge confirmed in open court that the State had noticed Mr. Cozzens of the VCC enhancement.  (Dkt. 7, Ex. 2 at 352).  Consequently, trial counsel had no basis to object to a lack of notice as Mr. Cozzens alleges.  Mr. Cozzens fails to establish either deficient performance or resulting prejudice as *Strickland* requires. Consequently, Mr. Cozzens fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Mr. Cozzens contends that his trial counsel rendered ineffective assistance by not "more fully object[ing] and preserv[ing] for appeal purposes" an argument that, despite the State acknowledging that Mr. Cozzens was not a "violent threat" to society,[3] the State nevertheless pursued the "conflicting position" that Mr.

---

[3] During his argument at sentencing that the VCC enhancement should apply, the prosecutor argued:

Cozzens qualified as a violent career criminal for sentencing purposes.  The

Respondent argues that this ground is procedurally barred because Mr. Cozzens

did not raise the ground in state court.  However, a review of Mr. Cozzens's Rule

3.850 motion shows that he made substantially similar claims of ineffective

assistance of counsel in grounds four and five of his Rule 3.850 motion.  (Dkt. 7,

Ex. 7-4 at 11–13).  To the extent that Mr. Cozzens's raises in the federal petition

the same allegations that he presented to the state post-conviction court in his Rule

3.850 motion, he is not entitled to relief.

The state post-conviction court denied these grounds as follows:

*Ground IV*

In his fourth ground, Defendant argues that trial counsel was ineffective
for failing to object to the VCC sentencing enhancement absent
evidence of violence.  Despite his contentions to the contrary,
Defendant did qualify for the VCC enhancement.  Accordingly, his
attorney was not deficient in failing to object as Defendant has
suggested.

Pursuant to Florida law:

"'Violent career criminal' means a defendant for
whom the court must impose imprisonment
pursuant to paragraph (4)(d), if it finds that . . . [t]he
defendant has previously been convicted as an adult

---

He may not be a threat to society in terms of a violent threat, but he's certainly a
threat with respect to property and given the opportunity to take things that don't
belong to him out of other people['s] homes; especially when they're not in the
position to prevent it or stop it.

(Dkt. 7, Ex. 1 at 184).

> three or more times for an offense in this state or
> other qualified offense that is . . . [a]ny forcible
> felony, as described in s. 776.08 . . . ."

§ 775.084, Fla. Stat.  Under§ 776.08, the definition of forcible felony
includes burglary.  As noted above, Defendant was convicted of
burglary in this case.  Thus, Defendant's conviction falls within the
scope of the VCC statute.

Though Defendant argues that his particular crime should not be
considered for purposes of VCC enhancement, his assertions are
misguided.  Defendant avers that because this case involves the
burglary of an unoccupied structure, his crime cannot be considered
violent in nature.  Despite Defendant's position, case law makes clear
that burglary of an unoccupied structure may qualify as a predicate
conviction under § 775.084.  *Cala v. State*, 854 So. 2d 840, 840–41
(Fla. 3d DCA 2003) (citing *Woody v. State,* 847 So. 2d 566 (Fla. 3d
DCA 2003)); *Delsol v. State*, 837 So. 2d 428 (Fla. 3d DCA 2002);
*Spikes v. State,* 851 So. 2d 252 (Fla. 3d DCA 2003)); *c.f. Fisher v. State*,
129 So. 3d 468, 468–69 (Fla. 2d DCA 2014) (reversing VCC
designation, not because burglary of an unoccupied structure was not a
qualifying offense, but because the appellant did not have the requisite
number of prior offenses).

Since Defendant's conviction qualifies as a predicate conviction under
the VCC statute, his attorney was not deficient in failing to object to
Defendant's VCC enhancement on the basis alleged by Defendant.  *C.f.
Rogers v. State*, 957 So. 2d 538, 549 (Fla. 2007) (noting that trial
counsel is not ineffective for failing to raise a frivolous objection).  As
such, Defendant's fourth ground is denied.

*Ground V*

In his fifth ground, Defendant argues that "counsel was ineffective for
failing to object to the State's conflicted position on the Defendant's
qualification for violent career criminal (VCC) sentence enhancement."
Defendant claims that because the State commented that Defendant is
not a violent threat, he was not eligible for VCC enhancement.  In light

of this, he claims that his attorney was ineffective in failing to address this issue.

Defendant's . . . ground is denied because his attorney was not ineffective for the reasons asserted therein. As discussed in Ground IV, above, Defendant's conviction in this case qualified for the VCC enhancement.   Thus, Defendant's argument that counsel was ineffective for failing to object to the enhancement is misguided. Moreover, the record reflects that defense counsel did argue that Defendant's sentence should not be enhanced in view of the non-violent nature of Defendant's crime.   As such, the record appears to refute Defendant's assertion.  In view of the above, Defendant's . . . ground is denied.

(Dkt. 7, Ex. 7-4 at 36–38) (court's record citations omitted).

The state post-conviction court determined that, as a matter of statutory interpretation and as a matter of state law, Mr. Cozzens qualified as a violent career criminal and application of the sentence enhancement was proper.  This court is bound by the state court's interpretation of state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), *cert. denied*, 507 U.S. 975 (1993); *Davis v. Jones*, 506 F.3d 1325, 1332 (11th Cir. 2007) (same).  Because application of the sentencing enhancement was appropriate, trial counsel

had no basis to object as Mr. Cozzens suggests.  Mr. Cozzens fails to meet his

burden of proving that the state court unreasonably applied *Strickland* or

unreasonably determined the facts by rejecting this ground of ineffective assistance

of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Mr. Cozzens contends that his trial counsel rendered ineffective assistance

by not objecting to an allegedly suggestive photopack identification.  Mr. Cozzens

alleges that the photopack was "prejudicial and suggestively tainted" because (1)

two of the six photographs "were extremely dark, one . . . of which was the

defendant," (2) "[t]he hair of the defendant/Appellant is much shorter than that of

the other five (5) subjects depicted," and (3) "[a]ll of the photos were unfairly

hi[gh]lighted and overly prejudicial to the defendant/Appellant being the only

short-haired person and one . . . of the two . . . extremely dark photos, causing a

much greater opportunity for a 'false positive' or mistaken identification."  (Dkt. 1

at 12).

The state post-conviction court denied this ground as follows:

> Defendant claims entitlement to relief, alleging ineffective assistance
> of trial counsel.  Specifically, he asserts that counsel was ineffective for
> failing to object to photopack evidence, and testimony used to identify
> him.  Defendant claims that the photopack was unduly suggestive and
> that his identification as a suspect was the result of the overly
> suggestive photopack.  He further alleges that he was prejudiced by
> counsel's failure to object to this evidence.

. . . .

In its response, the State argues that the photopack was admissible regardless of Defendant's arguments and that there was nothing unduly suggestive about the photopack.  Upon review, the State's argument is well taken.  As such, the Court will deny Defendant's sixth ground.

Photographs used in lineups are not unduly suggestive if "the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics."  *State v. Francois*, 863 So. 2d 1288, 1289–90 (Fla. 4th DCA 2004).  Here, Defendant asserts that the photopack was unduly suggestive because: 1) two photos (one being Defendant's) are darker than the others; and 2) Defendant's hair is shorter than the other persons in the array.  Photographic arrays can consist of photographs that differ in ways such as background color, clothing, hair color, and pose, and these differences alone do not make the arrays suggestive.  *State v. Styles*, 962 So. 2d 1031, 1034 (Fla. 3d DCA 2007), citing *Lewis v. State*, 572 So. 2d 908 (Fla. 1991); *see also Green v. State*, 641 So. 2d 391, 394 (Fla. 1994) (finding that photographic array was not suggestive even though the defendant was pictured with a darker background than the other photographs).  In all six photographs in the relevant photopack, the background color, hair color, and pose are remarkably similar.  Although Defendant's face does appear slightly less illuminated than some of the other photographs in the array, Defendant's facial characteristics are not substantially different from the other men pictured in the array so as to give rise to undue suggestiveness.  Despite the fact that there are minor variations in hair length, the persons depicted all appear to be in the same general age range and possess similar facial features.  *See State v. Francois*, 863 So. 2d at 1289–90 ("[g]enerally, photographic arrays have been upheld where they have included a reasonable number of persons similar to any person then suspected whose likeness is included in the array.").  Since this Court finds nothing objectionable about the photo array in question, it holds that counsel was not deficient in failing to move to suppress it.  *See Parker v. State*, 611 So. 2d 1224, 1227 (Fla. 1992) ("The failure to raise a nonmeritorious issue is not ineffectiveness.").

24

Furthermore, regardless of whether the photopack was unnecessarily suggestive, Defendant has not shown that any purported suggestiveness of the photopack resulted in a substantial likelihood of irreparable misidentification. *See Fitzpatrick*, 900 So. 2d at 517–518. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the time of the out-of-court identification, and the length of time between the crime and the identification. *Grant v. State*, 390 So. 2d 341, 343 (Fla. 1980); *State v. Dorsey*, 5 So. 3d 702 (Fla. 2d DCA 2009).

In this case, eyewitness Stuart Turnbull clearly observed the burglar, in broad daylight, from 15 to 20 feet away. Based on his heightened suspicion, it is clear that the witness was paying a high degree of attention to the events. Additionally, the record reflects that Mr. Turnbull participated in the photo identification on the same day he witnessed the crime. Thus, based upon the record, it is clear that any suggestiveness in the photopack did not result in a substantial likelihood of irreparable misidentification.

In view of the above discussion, counsel was not ineffective in failing to object to the admission of the photo array or the subsequent related testimony. As such, Defendant's sixth ground is denied.

A defendant possesses a due process right to exclude identification testimony resulting from an unnecessarily suggestive identification procedure conducive to irreparable mistaken identification. *Manson v. Brathwaite*, 432 U.S. 98, 104 (1977); *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967). A suggestive identification procedure, without more, results in no due process violation. *Neil v. Biggers*, 409 U.S. 188, 198–99 (1972). An assessment of the constitutionality of a trial court's decision to admit an out-of-court identification is a two-step analysis.

25

First, the court must determine whether the original identification procedure was unduly suggestive. *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (11th Cir. 1986), *modified in part on other grounds*, 809 F.2d 750 (11th Cir.), *cert. denied*, 481 U.S. 1059 (1987).  If not, the inquiry is over.  *See Perry v. New Hampshire*, 565 U.S. 228, 233 (2012) ("Our decisions . . . turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, show up, or photograph array.  When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.").  Only if the original identification procedure was unduly suggestive must the court then consider whether, under the totality of the circumstances, the identification was nonetheless reliable.  *See Perry*, 565 U.S. at 241 ("The due process check for reliability, *Brathwaite* made plain, comes into play only after the defendant establishes improper police conduct.").

Mr. Cozzens does not overcome with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's factual findings. 28 U.S.C. § 2254(e)(1).  Furthermore, he fails to overcome the strong

26

presumption that counsel's decisions regarding the identification evidence were made in the exercise of professional judgment. *Strickland*, 466 U.S. at 690. Even if the original identification procedure was unduly suggestive, nonetheless, it is objectively reasonable to conclude under the totality of the circumstances, that the procedures employed in Mr. Cozzens's case did not create a substantial risk of irreparable misidentification. Witness Stuart Turnbull testified that he saw a man, later identified as Mr. Cozzens, carry two boxes out of the victim's house. (Dkt. 7, Ex. 2 at 173). Mr. Turnbull testified at trial that he observed Mr. Cozzens in "broad daylight" from "15 to 20 feet" away and had nothing obstructing his view of Mr. Cozzens's face. (Id. at 174). Officer Dale Johnson testified that Mr. Turnbull identified Mr. Cozzens in the photopack "within an hour or so" of the police responding to the victim's house. (Id. at 231–32). Detective Thomas Tully testified that Mr. Cozzens, after receiving *Miranda* warnings, admitted that he broke into the victim's house. (Id. at 264). The state record bears out the objectively reasonable determination that the eyewitness had ample opportunity to view Mr. Cozzens at the time of crime and, therefore, it is objectively reasonable to conclude the identification evidence was reliable. Mr. Cozzens fails to show there was any reasonable probability of a different outcome at trial if his trial counsel had objected to the photopack evidence. Consequently, Mr. Cozzens fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or

unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Mr. Cozzens's petition for the writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk must enter a judgment against Mr. Cozzens and **CLOSE** this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Mr. Cozzens is not entitled to a certificate of appealability ("COA").  Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Mr. Cozzens must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Mr. Cozzens is entitled to neither a COA nor leave to appeal *in forma pauperis*.

28

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Mr. Cozzens must obtain permission from the circuit court to appeal in forma pauperis.

**DONE and ORDERED** on August 3, 2020.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE